**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| MISSISSIPPI IMMIGRANTS RIGHTS ALLIANCE and LEAGUE OF WOMEN VOTERS OF MISSISSIPPI, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL WATSON, in his official capacity as Secretary of State of the State of Mississippi; KEN ADCOCK, in his official capacity as the Leake County Circuit Clerk; CONCETTA BROOKS, in her official capacity as Jones County Circuit Clerk; RANDY CARNEY, in his official capacity as the Jackson County Circuit Clerk; REBECCA GRAY, in her official capacity as Scott County Circuit Clerk; CONNIE LADNER, in her official capacity as Harrison County Circuit Clerk; and ZACK WALLACE, in his official capacity as Hinds County Circuit Clerk. <br><br> Defendants. | Civil Action No. 3:19-cv-831-CWR-FKB |

**FIRST AMENDED COMPLAINT**

**INTRODUCTION**

1.     This is an action brought under 42 U.S.C. § 1983 against Michael Watson, in his official capacity as the Secretary of State of the State of Mississippi (the "Secretary") and the circuit clerks of Harrison, Hinds, Jackson, Jones, Leake, and Scott Counties, all in their official capacities.

2.     Section 1 of the Fourteenth Amendment provides:

1

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

3.     Mississippi Code Ann. § 23-15-15 imposes a documentary proof-of-citizenship voter registration requirement on naturalized citizens, but not on anyone else.  The statute provides:

> It shall be the duty of any person who has acquired citizenship by order or decree of naturalization and who is otherwise qualified to register and vote under the laws of the State of Mississippi to present or exhibit to the registrar of the county of his or her residence, at or before the time he or she may offer to register, a certified copy of the final order or decree of naturalization, or a certificate of naturalization or duplicate thereof, or a certified copy of such certificate of naturalization or duplicate;  otherwise he or she shall not be allowed to register or to vote.

Miss. Code Ann. § 23-15-15.

4.     On its face, § 23-15-15 treats naturalized citizens — who are overwhelmingly foreign-born immigrants — differently from U.S.-born citizens for purposes of voter registration.  That is unconstitutional.  The Fourteenth Amendment's Equal Protection Clause itself draws no distinction between citizens born or naturalized in the United States.  In the eyes of the Constitution, they are one and the same.

5.     Naturalized citizens are ***American citizens*** in every sense of the term, and they must be treated as such.  Naturalized citizens demonstrate their commitment to the United States, and the guiding principles upon which it was founded, by completing a lengthy naturalization process, being a permanent legal resident of the United States for at least five years, completing an interview, and passing tests involving speaking, reading, and writing in English and a test on U.S. history and government.  They have satisfactorily demonstrated "an attachment to the

principles and ideals of the U.S. Constitution." *See* Naturalization Information, Dep't of

Homeland Security, *available at* https://www.uscis.gov/citizenship/educators/naturalization-

information.  They have the right to vote in local, state, and federal elections — a right which

§ 23-15-15 intends to, and does, violate.

6.      This is not the only potential roadblock to naturalized citizens who might seek to

register to vote in Mississippi.  Pursuant to Miss. Code Ann. § 23-15-47(2)(b) and under the

Secretary's current administrative policy, as implemented by Defendants and other Mississippi

circuit clerks, voter registration applications submitted by eligible voters are not added to the list

of persons eligible to vote if records maintained by the Mississippi Department of Public Safety

("DPS") indicate that the applicant is a non-citizen.  When a local circuit clerk or other official

enters a voter registration, the Statewide Elections Management System ("SEMS") requires voter

verification by clicking on a "Verify DPS" button, which attempts to match the applicant to DPS

data (hereinafter, the system is referred to as "Verify DPS").  If the DPS records suggest that the

voter is not a citizen, the applicant cannot cast a ballot unless they present proof of citizenship

within 25 days.  If they do not, election officials reject the voter registration application.

7.      Section 23-15-15's differential treatment of naturalized citizens and the

implementation of the Verify DPS database matching protocol is burdensome on persons of color

and naturalized citizens, discourages them from registering to vote and voting, and in many cases

forecloses them from registering to vote and voting.  This differential treatment and

discriminatory impact violate the Fourteenth Amendment and long-standing U.S. Supreme Court

jurisprudence, which recognizes that "[c]itizenship obtained through naturalization is not a

second-class citizenship."  *United States v. Knauer*, 328 U.S. 654, 658 (1946).  As former Justice

Louis Brandeis once remarked, "the only title in our democracy superior to that of President is

the title of citizen."  U.S. Citizenship & Immigration Servs., The Citizen's Almanac 2 (2014),

*available at* http://tinyurl.com/qfesah6, and further unconstitutionally burdens the right-to-vote of all citizens, particularly naturalized citizens and citizens of color.

8.     No state in the United States other than Mississippi subjects naturalized citizens to a higher proof-of-citizenship requirement for voter registration than U.S.-born citizens.  The time has come for the State of Mississippi to stop doing so.

9.     Plaintiffs respectfully seek a judicial declaration that § 23-15-15 is unconstitutional because it discriminates against naturalized citizens by singling them out for differential treatment in violation of the Fourteenth Amendment's Equal Protection Clause.

10.     Plaintiffs also respectfully seek a judicial determination that Mississippi's use of the Verify DPS database matching protocol to systematically deny voter registration opportunities to voter registration applicants who do not respond to a letter within 25 days unconstitutionally burdens the fundamental right to vote.

11.     Plaintiffs also respectfully request that the Court grant and issue a permanent injunction (1) prohibiting the enforcement of § 23-15-15's proof-of-citizenship requirement and placing Mississippi's naturalized citizens on equal footing with the State's other voter-registration applicants; (2) requiring the Secretary, Mississippi's chief election official, to take affirmative steps to educate local election officials and the general public about the changed registration requirements; and (3) discontinuing the systematic rejection of voter registration applications due to a failure to present proof of citizenship within 25 days of receiving notice that the applicant has been flagged by the Verify DPS database matching protocol.

## JURISDICTION AND VENUE

12.     This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (jurisdiction over civil rights

actions).

14.     The Court has authority to grant both declaratory and injunctive relief pursuant to

28 U.S.C. § 2201 (authority to grant declaratory relief) and 28 U.S.C. § 2202 (authority to grant

relief ancillary to declaratory judgment), in addition to its inherent equitable powers.

15.     The Court has personal jurisdiction over the Secretary, whose principal office is

located in Jackson, Mississippi.

16.     The Court has personal jurisdiction over Harrison, Hinds, Jackson, Jones, Leake,

and Scott Counties.

17.     Venue lies in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(b)

because the Secretary and Harrison, Hinds, Jackson, Jones, Leake, and Scott Counties are

residents of Mississippi, and a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred and will occur in this judicial district.

## **PLAINTIFFS**

18.     Plaintiff Mississippi Immigrants Rights Alliance ("MIRA") is a nonpartisan,

interracial, nonprofit membership organization headquartered in Jackson, Mississippi.  MIRA

was founded in 2000 in response to the needs of the rapidly growing immigrant population in

Mississippi.  MIRA's mission involves using advocacy, education, organizing, and legal services

to expand and protect the rights of immigrants and their families in Mississippi.  MIRA currently

has approximately 1,000 members, many of whom are naturalized citizens.  In furtherance of its

mission, MIRA provides a range of services that help new Mississippians navigate the

naturalization process and become American citizens.  MIRA staff help many naturalized

citizens and U.S.-born family members of immigrants, some of whom are limited in their

English proficiency, to register to vote.  Indeed, MIRA participates in a program that has assisted

with registering innumerable citizens to vote and also has engaged in mobilizing new voters to

participate in elections.  (*See* Exhibit A.)

19.    Plaintiff League of Women Voters of Mississippi ("LWVMS") is a Mississippi

non-profit corporation headquartered in Jackson, Mississippi.  LWVMS is an affiliate of the

League of Women Voters of the United States and are both "nonpartisan, multipurpose

organizations of women and men that encourages the informed and active participation of

citizens in government and influences policy through education and advocacy."  *See* League of

Women Voters of Mississippi, "Mississippi," https://my.lwv.org/mississippi.  Plaintiff

LWVMS's mission includes empowering voters, defending democracy and envisioning a

democracy where every person has the desire, the right, the knowledge and the confidence to

participate. Plaintiff LWVMS registers eligible individuals to vote across Mississippi, including

at naturalization ceremonies, where LWVMS members offer new citizens their first opportunity

to register to vote.  Plaintiff LWVMS has diverted resources from mission activities to address

§ 23-15-15's proof-of-citizenship requirement and the Verify DPS database matching protocol,

including by changing their voter registration practices at naturalization ceremonies in light of

the proof of citizenship requirement and reaching out to county circuit clerks to develop best

practices.  Plaintiff LWVMS has also diverted resources from mission activities by engaging in

voter education efforts to make naturalized citizens aware of the proof of citizenship requirement

and the computerized DPS database matching process and encourage them to take steps to check

and, if necessary, protect their voter registration status, for example by updating their driver's

license information so they are not inaccurately flagged as potential non-citizens by the

automated process.  Defendants' actions have frustrated and will continue to frustrate Plaintiff

LWVMS's mission.

**DEFENDANTS**

20.     Defendant Michael Watson is Mississippi's Secretary of State, and is being sued herein in his official capacity.  The Secretary leads the Elections Division of the Secretary of State's office, and in that capacity, is responsible for, among other things, ensuring that Mississippians' voices are heard throughout the election process, training election officials, and assisting local election officials in carrying out their election-related duties and responsibilities. *See* Mississippi Secretary of State, "Elections & Voting," http://www.sos.ms.gov/Elections-Voting/Pages/default.aspx.

21.     The Secretary of State is Mississippi's chief election officer for the purposes of the National Voter Registration Act of 1993.  Miss. Code Ann. § 23-15-211.1.

22.     The Mississippi Secretary of State is responsible for implementing and maintaining Mississippi's voter registration database, the Statewide Elections Management System.  That database contains the official list of all voters eligible to vote in Mississippi elections.  Miss. Code Ann. §§ 23-15-165(1), 23-15-11.  The Secretary of State is empowered to adopt rules and regulations necessary to administer the Statewide Elections Management System.  *Id.* § 23-15-165(4).

23.     The Mississippi Secretary of State's office created the State's mail-in registration form and is responsible for furnishing it to county circuit clerks and municipal registrars, driver's license offices, and other agencies.  Miss. Code Ann. §§ 23-15-47(3)-(4).  Under Mississippi Code § 25-33-33, the Secretary may prescribe forms and establish fees for services not otherwise provided by law.  The Secretary also has authority to promulgate regulations under the Mississippi Administrative Procedures Act.  Miss. Code Ann. §§ 25-43-1.101 *et. seq.*

24.     The Secretary also is charged with reviewing the Mississippi Election Code "for potential updates and revisions" to present to the State Legislature for consideration.  In 2016,

the Secretary formed the Election Code Study Group, comprised of legislators, circuit clerks, and election commissioners (among others) "to discuss current State election laws and determine which revisions or updates would promote security of the ballot, efficiency of the election system and transparency." Mississippi Secretary of State, "2016 Election Law Reform Committee," https://bit.ly/2rQ47mJ. Despite the ability to do so, the Secretary has not proposed a change to Mississippi Code § 23-15-15.

25.     Defendant Ken Adcock is the Leake County Circuit Clerk, and is being sued herein in his official capacity. Circuit clerks in Mississippi, including Mr. Adcock, are charged with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database matching protocol.

26.     Defendant Concetta Brooks is the Jones County Circuit Clerk, and is being sued herein in her official capacity. Circuit clerks in Mississippi, including Ms. Brooks, are charged with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database matching protocol.

27.     Defendant Randy Carney is the Jackson County Circuit Clerk, and is being sued herein in his official capacity. Circuit clerks in Mississippi, including Mr. Carney, are charged with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database matching protocol.

28.     Defendant Rebecca Gray is the Scott County Circuit Clerk, and is being sued herein in her official capacity. Circuit clerks in Mississippi, including Ms. Gray, are charged with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database matching protocol.

29.     Defendant Connie Ladner is the Harrison County Circuit Clerk, and is being sued herein in her official capacity. Circuit clerks in Mississippi, including Ms. Ladner, are charged

with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database

matching protocol.

30.     Defendant Zack Wallace is the Hinds County Circuit Clerk, and is being sued

herein in his official capacity.  Circuit clerks in Mississippi, including Mr. Wallace, are charged

with implementing § 23-15-15's proof-of-citizenship requirement and the Verify DPS database

matching protocol.

## FACTUAL ALLEGATIONS

### Requirements of Mississippi Law

31.     Only United States citizens may legally register to vote in the State of Mississippi.

Miss. Code Ann. §§ 23-15-11, 23-15-21.

32.     First-time Mississippi registrants can mail voter registration applications to their

respective county circuit clerks, or register in person at certain government agencies.  Miss. Code

Ann. § 23-15-47; 1-10 Miss. Code R. § 7.1.

33.     Mississippi law requires that all voter registration applicants affirm under penalty

of perjury that they are citizens of the United States.  *See*, *e.g.*, Mississippi Mail-In Voter

Registration Application, *available at* http://www.sos.ms.gov/Elections-Voting/Documents/

Voter_Registration.pdf.

34.     Mississippi voter registration applicants must provide a Mississippi driver's

license or the last four digits of their social security number.  1-10 Miss. Code R. Exhibit E at 24.

Applicants who cannot do so must produce a copy of a current and valid photo ID or a copy of a

current utility bill, bank statement, government check, paycheck, or other government document

showing their name and current address.  1-10 Miss. Code R. Exhibit D at 21.

35.     The foregoing requirements apply equally to both U.S.-born and naturalized

citizens.  But Mississippi's naturalized citizens are subject to an additional registration

requirement:  they must present "a certified copy of the final order or decree of naturalization, or

a certificate of naturalization or duplicate thereof, or a certified copy of such certificate of

naturalization or duplicate; otherwise [they] shall not be allowed to register or to vote."  Miss.

Code Ann. § 23-15-15.  In other words, under § 23-15-15, naturalized citizens are not permitted

to show, for example, a United States passport as proof of their citizenship.

36.     If a U.S. born citizen does not have a driver's license or any other documentation,

he or she can register to vote by providing the last four digits of his or her social security

number.  Naturalized citizens do not have this option and must present their naturalization

paperwork.

37.     Under the Mississippi Attorney General's interpretation of § 23-15-15, applicants

must present the enumerated documentation to the appropriate circuit clerk or any deputy county

registrar or municipal clerk that has the authority to process voter registration applications.   Op.

Miss. Att'y Gen., Aug. 25, 1989, 1989 WL 503394.

38.     Mississippi's documentary proof of citizenship statute, § 23-15-15, is currently

being implemented and applied to naturalized citizens in the State of Mississippi.

39.     The Mississippi Secretary of State's office confirmed in writing in December

2018 that "an applicant is not required to offer evidence of U.S. citizenship unless an applicant is

a naturalized citizen.  A naturalized citizen is required by statute (Mississippi Code Annotated

§ 23-15-15) to provide proof or evidence of naturalization to the local Circuit Clerk at the time of

registration."  (*See* Exhibit B, Letter from Anna Moak, Sr. Counsel, Miss. Sec'y of State's

Office, Dec. 26, 2018, at 2.)

40.     Mississippi's documentary proof-of-citizenship requirement for naturalized

citizens has existed since at least 1924, when the State Legislature enacted Chapter 154, and was

not subject to Section 5 preclearance under the Voting Rights Act.  Under Section 5, covered

jurisdictions cannot enact voting-related changes with a discriminatory purpose or implement voting-related changes that have a retrogressive effect on the ability of minority voters to participate in the political process (as determined by the Department of Justice, the United States District Court for the District of Columbia, or an appellate court). *See* 52 U.S.C. § 10304.

41.     Counsel for the State of Mississippi confirmed that the documentary proof-of-citizenship requirement was not subject to Section 5 preclearance in a submission of a separate omnibus election bill to the U.S. Department of Justice in 1986.  (*See* Exhibit C.)

42.     Mississippi has other procedures in place to promote the integrity of the electoral process.  All registered voters in Mississippi, including naturalized citizens who have already provided proof of citizenship when registering, also must provide photo identification to cast a ballot in person at a polling place.  H.B. 921, 2012 Miss. Leg., Reg. Sess.

43.     The Mississippi driver's licenses issued to non-citizens who are legally in the United States are stamped "Non-US Citizen Driver License."  *See* Arielle Dreher, *Mississippi Outs Legal Immigrants on Drivers' Licenses*, Jackson Free Press, Apr. 4, 2018, *available at* http://www.jacksonfreepress.com/news/2018/apr/04/mississippi-outs-legal-immigrants-licenses/. Naturalized citizens' driver's licenses do not contain this language.  Considering that non-citizens who are not eligible to vote possess driver's licenses clearly stamped "Non-US Citizen Driver License," there is no basis for prohibiting naturalized citizens from using their driver's license to register to vote.

**The Verify DPS Database Matching Protocol**

44.     Miss. Code Ann. § 23-15-47(2)(b) provides that "[u]pon receipt of a mail-in application, the county registrar shall stamp the application with the date of receipt, and shall verify the application either by matching the applicant's Mississippi driver's license number through the

Mississippi Department of Public Safety or by matching the applicant's social security number through the American Association of Motor Vehicle Administrators."

45. Mississippi law further provides that if "the county registrar is unable to verify the application pursuant to subsection (2)(b)" (*i.e.*, the matching process), the application "shall be rejected." Miss. Code Ann. § 23-15-47(2)(d)(iv).

46. In doing so, Mississippi goes beyond the list maintenance requirements of the Help America Vote Act of 2002 to disenfranchise eligible voters using strict database matching criteria.

47. The Mississippi Secretary of State described the Verify DPS database matching protocol in his July 1, 2020 response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents.

48. When a local circuit clerk or other local official enters a voter registration, SEMS requires a verification by clicking on the 'Verify DPS' button which attempts to match DPS information to the applicant. The system presents potential match information for the local registrar to accept, which includes driver's license numbers, last four digits of a social security number, date of birth, and potential different name variations (First, Middle, Last, Maiden), along with the U.S. citizenship 'Yes' or 'No' flag. If that information is determined to be a match, the local registrar *must* accept the match for the system to input that information.

49. If the DPS verification process indicates an applicant may not be a U.S. citizen, the local registrar can accept the match. Taking that step will populate the "U.S. Citizen" field as the applicant as not being a U.S. citizen, and the application is rejected.

50. The local election official has the option to manually mark the 'U.S. Citizen' flag as 'Yes' or 'No.' If the local registrar marks the 'U.S. Citizen' field as 'No,' the application is rejected.

51.     Once the application is rejected, the local registrar must notify the applicant of that fact and provide the specific reason for rejection.

52.     The registrar also has the option of designating the applicant's voter registration status as "pending" instead of rejecting the voter registration application outright.  If the registrar places the applicant in pending status, the registrar sends the applicant a letter requesting additional information.  If the applicant is placed in pending status because the Verify DPS database matching protocol indicates the voter is potentially a non-citizen, the voter must present proof of citizenship.

53.     If the proof of citizenship is not provided in a set amount of time – usually 25 days – the application is then rejected.  The rejected application is sent to the county election commission for automatic review.

54.     At this stage, the local registrar must send a letter to the applicant stating the next meeting of the county election commissioners, at which time the applicant may present evidence as to why the applicant should be registered to vote.

55.     Counties around the state are implementing the Verify DPS database matching protocol.  In response to subpoenas, the circuit clerks from Harrison, Hinds, Jackson, Jones, Leake, and Scott Counties have identified lists of applicants whose voter registration applications were rejected as a result of being identified as a potential non-citizen by the Verify DPS database matching protocol.

56.     The Verify DPS database matching protocol is inaccurate with respect to identify potential non-citizens and therefore places an undue burden on eligible voters and, in particular, naturalized citizens and citizens of color.  The "match" process is invariably plagued with errors, such as data entry mistakes, typos, misreading of imperfect handwriting by elections officials and computer glitches within the State's registration system.

57.    The most common problem is that the citizenship information contained in the DPS database is often outdated and inaccurate with respect to naturalized citizens.

58.    Non-citizens (e.g., green card holders) are permitted to own driver's licenses in Mississippi.  When they obtain U.S. citizenship, they often do not update their driver's license information.  If the DPS citizenship data has not been updated by the time the applicant attempts to register to vote, the applicant is incorrectly flagged as a non-citizen by the database matching process and their application will be flagged for rejection.

59.    For this reason, naturalized citizens that LWVMS registers to vote at a naturalization ceremony are rejected if those individuals obtained a driver's license before becoming a U.S. citizen and did not update their driver's license information with DPS shortly thereafter.

60.    According to the Secretary, rejected voter applicants must be given notice of the reason for the rejection.  Assuming it even reaches the applicant, the notice kickstarts a burdensome process for these (oft-eligible) voters.  The notices require "additional information" to be provided in a short window of time—25 days—and the applicant must provide such information at a meeting of the county election commissioners.

**Impact and Burden on Mississippi's Naturalized Citizens and Voters of Color**

61.    Section 23-15-15 discriminates against naturalized citizens by denying them the right to register to vote if they do not present their naturalization certificate or a certified copy thereof.  Only naturalized citizens must carry with them documentary proof of their citizenship — in the form of naturalization certificates — to guarantee the opportunity to register to vote.

62.    Further, the statute discriminates against naturalized citizens who might not have ready access to their naturalization certificates, particularly those individuals whose certificates have been stolen or misplaced and lack the financial means to pay the $555 filing fee to obtain

14

replacement copies.  The statute also burdens voters who do not have a "copy of the original document" to submit in connection with an application for a replacement certificate.  *See* U.S. Citizenship and Immigration Services, "N-565, Application for Replacement Naturalization/Citizenship Document," *available at* https://www.uscis.gov/n-565.

63.     Obtaining a replacement naturalization certificate from the U.S. Department of Homeland Security is a lengthy process, frequently taking more than six months or even more than a year to complete.  Replacing a naturalization certificate can result in applicants being required to respond to a request from the United States Citizenship and Immigration Services ("USCIS") to appear for an interview or to provide additional evidence in writing.  *See* U.S. Citizenship and Immigration Services, "Replace My Naturalization Certificate or Certificate of Citizenship," *available at* https://my.uscis.gov/exploremyoptions/lost_stolen_certificate.

64.     Section 23-15-15 also discriminates against naturalized citizens who may not have ready access to transportation or the ability to take time off work in order to comply with the proof of citizenship requirement.  Native-born citizens have several options for how to register to vote — in person at the circuit clerk's office; municipal clerk's office; or any state or federal agency offering government services, such as the Department of Human Services; at the Mississippi Department of Public Safety when obtaining a driver's license or identification card; or simply by mailing in the voter registration application.  Section 23-15-15, however, requires that naturalized citizens "present or exhibit" their naturalization certificate to the local circuit clerk — and not to anyone else — to register to vote.

65.     The documentary proof-of-citizenship requirement classifies thousands of Mississippi's naturalized citizens and designates them for unequal treatment.  Naturalized citizens of Mississippi who no longer have copies of their naturalization certificates because their original certificates were lost, destroyed, damaged, or stolen, and who lack the means of

obtaining replacement copies, may be denied the ability to register and, ultimately, their right to vote as a result of the documentary proof-of-citizenship requirement.  Naturalized citizens seeking to register to vote whose naturalization certificates are lost, stolen, damaged, or destroyed within months before an election may not be able to obtain a replacement certificate in time to vote or to have their provisional ballots counted.

66.     The problem created by § 23-15-15 is made more pronounced because of Mississippi's practices at naturalization ceremonies.  According to USCIS, "All newly naturalized citizens must be given the opportunity to register at the end of the administrative naturalization ceremony when the new citizen is then eligible to register to vote."  12 USCIS-PM J.5(F)(1).  USCIS's preference is for state or local election officials to provide voter registration services at the ceremony.  *Id.*  If that is not possible, USCIS's next stated preference is for a non-governmental organization that conducts voter registration to provide such services at the ceremony.  *Id.*  In the absence of these options, USCIS's policy is to provide voter registration applications to all new citizens.  *Id.*; 12 USCIS-PM J.5(J)(1) ("USCIS is responsible for . . . [e]nsuring that voter registration applications are offered to new citizens at the end of the ceremony.").

67.     In many states, such as Texas, Florida, and Georgia, voter registration opportunities are generally available at naturalization ceremonies for new citizens and their families.  Voter registration groups, in coordination with state election officials and law enforcement authorities, bring applications and other necessary materials to naturalization ceremonies and conduct registration drives for new citizens and other individuals who wish to register to vote.

68.     In Mississippi, however, voter registration opportunities are not available at naturalization ceremonies as frequently as they are in other states.  Despite the federal

government's express goal of providing voter registration opportunities at naturalization ceremonies, LWVMS is one of few groups that attends the naturalization ceremonies and registers new voters.

69.     Applicants who are registered by LWVMS at naturalization ceremonies are at risk of having their applications getting held up or rejected due to the Verify DPS database matching protocol.  These applicants face rejection unless they jump through burdensome and confusing administrative hoops.

70.     According to the 2013-2017 American Community Survey, there are approximately 26,424 naturalized citizens in Mississippi.

71.     Mississippi's naturalized citizen population has increased by more than 50 percent between 2000 (roughly 16,098 per the 2000 decennial census) and 2015 (approximately 26,424 per the 2013-2017 American Community Survey).

72.     Mississippi's naturalized citizen population is predominantly non-white.  Of the approximately 26,424 naturalized citizens in Mississippi, about 11,989 (45.3%) were born in Asia, 8,063 (30.5%) were born in Latin America, 4,193 (15.8%) were born in Europe, and 1,507 (5.7%) were born in Africa, according to the 2013-2017 American Community Survey.

73.     Due to the racial demographic characteristics of Mississippi's immigrant population, and based on a preliminary review of the voter lists maintained by the State of Mississippi, Plaintiffs allege that the burdens imposed by the Verify DPS database matching protocol and proof of citizenship requirements disproportionately impact voter registration applicants of color and naturalized citizens relative to the overall voter applicant pool in Mississippi.

**Impact and Burden on MIRA, LWVMS and their Members**

74.     The protection of the rights of immigrants and their families in Mississippi is a fundamental part of Plaintiffs' missions.  Voting is one of the most important rights — and responsibilities — that citizens have.  Thus, helping naturalized citizens and U.S.-born family members of immigrants to register to vote is crucial to Plaintiffs' mission.

75.     MIRA provides additional services to immigrants living in Mississippi, including assistance with the naturalization process and assistance with access to housing, health care, and safe working conditions.  MIRA's other organizational activities include legislative advocacy, public education efforts, and providing legal services to immigrants.

76.     LWVMS is a leader in Mississippi with respect to registering naturalized citizens at naturalization ceremonies.  LWVMS has changed their voter registration practices at naturalization ceremonies in light of the proof of citizenship requirement and are in the course of reaching out to county circuit clerks to develop best practices.  LWVMS is engaging in voter education efforts to make naturalized citizens aware of the proof of citizenship requirement and the Verify DPS database matching process.  LWVMS is encouraging naturalized citizens to update their driver's license information so they are not inaccurately flagged as potential non-citizens by the automated process.

77.     Helping U.S.-born citizens, including family members of immigrants, to register to vote is generally a simple process that requires the completion and submission of the voter registration form.  Educating voters about how to comply with the proof of citizenship requirement and the Verify DPS database matching protocol requires additional resources in the form of staff, volunteer time, and money.  Those resources are allocated to educating naturalized citizens regarding the additional registration requirements and counseling and assisting them with respect to how to navigate the potential bureaucratic hurdles.  As the population of

naturalized citizens grows in Mississippi, Plaintiffs are forced to increasingly divert resources to combat the burden imposed by Mississippi's proof-of-citizenship requirement for naturalized citizens and Verify DPS database matching protocol.  Plaintiffs resources are very limited because the organizations rely primarily on donations and volunteers to conduct their operations. As such, every hour of staff or volunteer time that is expended to address the proof-of-citizenship requirement or Verify DPS database matching protocol is being diverted from other projects, such as its naturalization services and legislative advocacy efforts.  Thus, the proof-of-citizenship and Verify DPS database matching protocol frustrate Plaintiffs' missions.

## COUNT I: EQUAL PROTECTION – PROOF OF CITIZENSHIP REQUIREMENT
### 42 U.S.C. § 1983 – Discrimination Against Naturalized Citizens in Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

78.     Plaintiffs incorporate and re-allege each of the foregoing paragraphs as though set forth fully herein.

79.     Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

80.      The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

81.     Mississippi's voting procedures deny equal protection of the laws to its naturalized citizens by arbitrarily and unnecessarily creating two classes of voter registration

applicants: naturalized citizens, who are subject to a documentary proof-of-citizenship requirement, and native-born U.S. citizens, who are not subject to any such requirement.

82.     The documentary proof-of-citizenship requirement singles out naturalized citizens because it requires that they produce a naturalization certificate or a certified copy before being permitted to register to vote.  This requirement discriminates on the basis of national origin in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

83.     Mississippi's documentary proof-of-citizenship requirement for naturalized citizens is not outweighed by, and is not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

84.     There is no compelling or even legitimate justification for imposing the extra burden of a proof of citizenship voter registration requirement on the right to vote of Mississippi's naturalized citizens, or for limiting the forms of acceptable documentation to a naturalization certificate or a certified copy.

85.     While § 23-15-15 is subject to strict scrutiny, there is no legitimate or even rational reason why requiring documentary proof of citizenship solely from naturalized citizens is likely to prevent voting by ineligible non-citizens.

86.     Mississippi's documentary proof-of-citizenship requirement is being implemented under color of the laws of the State of Mississippi.

87.     Existing provisions of the Mississippi Code and federal law adequately protect the integrity of elections in Mississippi.  *See*, *e.g.*, Miss. Code Ann. § 97-13-25 (illegal registration is a crime resulting in imprisonment in a State Penitentiary for up to five years and/or a fine of up to $5,000), § 23-15-21.

88.     Plaintiffs will continue to suffer the violation of its rights as alleged in this

Complaint absent relief granted by the Court.

### COUNT 2: EQUAL PROTECTION – VERIFY DPS DATABASE MATCH

**42 U.S.C. § 1983 – Discrimination Against Naturalized Citizens in Violation of the Equal
Protection Clause of the Fourteenth Amendment to the United States Constitution**

89.     Plaintiffs incorporate and re-allege each of the foregoing paragraphs as though set

forth fully herein.

90.     Under the Equal Protection Clause, discrimination based on naturalized

citizenship and on national origin is presumptively unconstitutional and subject to strict scrutiny.

91.     The Verify DPS database matching protocol designed by the Mississippi

Secretary of State and implemented by the defendant county officials discriminates against

naturalized citizens because it singles them out as a group for special burdens to register to vote

while categorically excluding U.S.-born citizens from those burdens.

92.     Defendants require naturalized citizens who obtained a driver's license before

becoming a U.S. citizen to provide proof of citizenship to vote and navigate the bureaucratic

hurdles associated with being flagged as a non-citizen by the Verify DPS database matching

protocol under the threat of having their registration application denied and losing their right to

vote.  This requirement, by design, does not apply to U.S.-born citizens.

93.     The Secretary of State's method of using outdated DPS information that

necessarily targets a large number of naturalized citizens but excludes U.S.-born citizens,

without taking any meaningful steps to ensure that naturalized citizens will not be subjected to

the erroneous denial of the right to vote, the Verify DPS database matching protocol creates a

classification that discriminates against naturalized citizens.

21

94.     By using inaccurate information from the DPS database indicating that, at best, applicants were not U.S. citizens at some point in the past, Defendants are making a classification on the basis of national origin.

95.     The classification established by the Verify DPS database matching protocol is neither justified by nor narrowly tailored to promote a substantial or compelling state interest.

96.     Through the Verify DPS database matching protocol, Defendants unlawfully discriminate against naturalized citizens with respect to the fundamental right to vote on the basis of national origin, treating foreign-born U.S. citizens differently from those born within the United States.

**COUNT 3: BURDEN ON THE FUNDAMENTAL RIGHT TO VOTE – VERIFY DPS**
**42 U.S.C. § 1983 – Violation of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution as to All Citizens**

97.     Plaintiffs incorporate and re-allege each of the foregoing paragraphs as though set forth fully herein.

98.     The First and Fourteenth Amendments of the United States Constitution protect the right to vote as a fundamental right.  The First Amendment's guarantees of freedom of speech and association protect all citizens' right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by both the due process clause and equal protection clause of the Fourteenth Amendment.  *See*, *e.g.*, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966); *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 & n.7 (1983).

99.     The Verify DPS database matching protocol prevents many eligible applicants from registering to vote by inaccurately identifying them as non-citizens due to outdated or inaccurate information contained in the driver's license database or due to other flaws with the

process.  By systematically denying eligible applicants the opportunity to register to vote through no fault of their own, the matching process imposes a severe burden on the fundamental right to vote.

100.    The Verify DPS database matching protocol imposes substantial burdens on citizens' right to vote, in particular naturalized citizens who did not know they would be flagged as a non-citizen if they registered to vote before updating their driver's license information.  The impact on naturalized citizens requires Plaintiff organizations to divert resources in an attempt to educate naturalized citizens about the process and prevent voter registration applicants from getting ensnared by the process and from being disenfranchised.

101.    The Verify DPS database matching protocol also imposes substantial burdens on citizens of color, who are disproportionately denied the opportunity to register as a result of application of the matching process.  The impact on citizens of color requires Plaintiff organizations to divert resources in an attempt to educate citizens of color about the process and prevent voter registration applicants from getting ensnared by the process and from being disenfranchised.

102.    The burdens of this protocol are substantial and cannot pass muster even under the *Anderson-Burdick* balancing test which weighs the severity of the burden on the right to vote against the state's interest in imposing the burden.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson*, 460 U.S. at 789.

103.    There is no sufficient state interest justifying the protocol that was not already adequately protected by existing laws and election procedures.

104.    Further, Plaintiffs are without an adequate remedy at law. Unless the Court enjoins the Defendants from maintaining and applying his unlawful voter registration

verification protocol, Plaintiffs will continue to suffer the immediate and irreparable harm described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.     Enter judgment in favor of Plaintiffs and against the Secretary and the Circuit Clerks of Harrison, Hinds, Jackson, Jones, Leake, and Scott Counties on the claims for relief as alleged in this Complaint;

2.     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Mississippi's documentary proof-of-citizenship requirement for naturalized citizens as codified in § 23-15-15 of the Mississippi Code and the Verify DPS database matching protocol as codified in § 23-15-47 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that the Verify DPS database matching protocol violates the First Amendment and the Due Process Cause of the Fourteenth Amendment.

3.     Grant Plaintiffs preliminary and/or permanent injunctive relief by enjoining the enforcement of Mississippi's proof-of-citizenship requirement as codified in § 23-15-15 of the Mississippi Code and the Verify DPS database matching protocol as codified in § 23-15-47;

4.     Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering the Defendants and their employees, agents, officers, servants, and successors to undertake the following remedial actions:

a.     Enjoin Defendants from requiring documentary proof of citizenship from naturalized citizens (i.e., they must accept the same affirmation of citizenship, under penalty of perjury, provided by naturalized citizens who are seeking to register to vote as for all other voters);

      b.     Enjoin Defendants from using the Verify DPS database matching protocol to (1) reject voter registration applications due to a failure to remedy the mismatch or discrepancy in the DPS data within twenty five days of the issuance of a notification or (2) to mandatorily or presumptively deny voter registration or reject ballots completed by otherwise eligible applicants flagged by the matching process (absent independent proof from a source other than the DPS database that the applicant is not a U.S. citizen);

      c.     Update the Secretary's website, election guide, manuals, guidance, rules, regulations, educational materials, and policies to confirm that naturalized citizens may register to vote using the same affirmation of citizenship, under penalty of perjury, that all other voters are required to provide under state law, and that the Verify DPS database matching protocol cannot be used to mandatorily or presumptively deny voter registration to applicants flagged by the matching process, and to issue guidance to county election officials that they should update their respective websites, election guides, manuals, guidances, educational materials, and policies accordingly.

      d.     Conduct regular trainings for relevant staff at circuit clerk offices and other election officials on registration requirements for naturalized citizens and for how they can verify the citizenship of voter registration applicants, including that naturalized citizens may register to vote using the same affirmation of citizenship, under penalty of perjury, that all other voters are required to provide under state law and that voter registration should not be denied absent independent proof outside of the DPS database that the applicant is not a U.S. citizen, and take affirmative steps to evaluate and ensure staff are providing voters with correct information;

      e.     Educate Mississippians that naturalized citizens may register to vote using the same affirmation of citizenship, under penalty of perjury, that all other voters are

required to provide under state law, including, but not limited to, a press release to the media, the distribution of print notices to all organizations that provide services to naturalized citizens, and posting a notice on the Secretary of State's website;

      f.     Take steps (e.g., an audit) to evaluate and ensure that staff at county circuit clerks' offices are providing naturalized citizens with the correct information about the procedures under which they may register to vote;

      g.     Undertake all necessary steps to ensure that naturalized citizens in Mississippi may register to vote using the same affirmation of citizenship, under penalty of perjury, that all other voters are required to provide under state law, including but not limited to any necessary changes to the statewide voter registration database;

      h.     Require the Secretary to transmit any Order of this Court granting preliminary or final injunctive relief to county boards of elections;

      i.     Require the Secretary to take all steps permitted by law to allow and encourage voter registration groups to conduct voter registration at naturalization ceremonies attended by Mississippi residents who are obtaining United States citizenship;

5.     Order that the Defendants and their employees, agents, servants and successors maintain, preserve, and not destroy until after December 31, 2028, any and all records relating to implementation of § 23-15-15 of the Mississippi Code and the Verify DPS database matching protocol.

6.     Order that the Court shall retain jurisdiction over Defendants and their successors for such period of time as may be appropriate to ensure compliance with relief ordered by this Court;

7.     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

8.     Grant Plaintiffs such other and further relief as may be just and equitable.

Dated:  October 23, 2020                    Respectfully submitted,

                                            _/s/  John Powers_____

Reilly Morse (MS Bar No. 3938)              Ezra D. Rosenberg
Mississippi Center for Justice              John Powers*
P.O. Box 1023                               Lawyers' Committee for Civil Rights
Jackson, MS 39205-1023                        Under Law
Phone: (601) 352-2269                       1500 K Street NW, Suite 900
borlansky@mscenterforjustice.org            Washington, D.C. 20005
                                            Phone: (202) 662-8600
                                            Fax: (202) 783-0857
_/s/  Robert B. McDuff_____                erosenberg@lawyerscommittee.org
Robert B. McDuff (MS Bar No. 2532)          jpowers@lawyerscommittee.org
Mississippi Center for Justice
767 North Congress Street
Jackson, MS 39202
Phone: (601) 969-0802
rbm@mcdufflaw.com


                        *Attorneys for Plaintiffs*


* Admitted *pro hac vice*


27

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 23, 2020, I filed a copy of the above First Amended Complaint

with the Court's electronic filing system, which will send notice to all counsel of record.

_____*/s/ John Powers*_____
Lawyers' Committee for Civil Rights
  Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005